**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**LAURIE STEELE,**

**Plaintiff,**

**v.**

**NATIONWIDE CHILDREN'S HOSPITAL,**

**Defendant.**

**Case Number 2:23-cv-3335**
**Judge Edmund A. Sargus, Jr.**
**Magistrate Judge Chelsey M. Vascura**

# OPINION AND ORDER

This matter is before the Court on Defendant Nationwide Children's Hospital's Motion for Summary Judgment. (ECF No. 24.) Plaintiff Laurie Steele filed a response in opposition (ECF No. 29), and Nationwide Children's Hospital filed a reply (ECF No. 31). For the reasons stated in this Opinion and Order, Nationwide Children's Hospital's Motion for Summary Judgment is **GRANTED**. (ECF No. 24.)

## BACKGROUND

This case arises out of Nationwide Children's Hospital's ("NCH") COVID-19 vaccination mandate for employees. (*See* ECF No. 1.) Ms. Steele, a former NCH employee, alleges that NCH violated Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000(e), *et seq.*), the Age Discrimination in Employment Act ("ADEA") (29 U.S.C. § 621, *et seq.*), and corresponding sections of the Ohio Revised Code. (*Id.*)

### I. Factual Background

Ms. Steele worked at NCH for over 35 years. (ECF No. 1, ¶ 9.) During the COVID-19 pandemic, she was a pediatric dialysis nurse. (Steele Dep., ECF No. 24-4, 22:19–22; 24:19–21.)

In February 2022, NCH implemented a COVID-19 vaccination policy in accordance with a federal rule promulgated by the Department of Health and Human Services' Centers for Medicare and Medicaid.[1] (Wise Decl., ECF No. 24-3, PageID 392; Exs. 1, 2.) The policy required all NCH employees to receive at least one dose of one of the three COVID-19 vaccines by February 13, 2022. (Wise Decl., Ex. 1, PageID 398–99.) Employees could request an exemption from the vaccination requirement by submitting a request to NCH's Religious Exemption Review Committee. (Wise Decl., PageID 391–92; *see generally id.*, Ex. 1.) The Committee received 845 requests for religious exemptions to the COVID-19 vaccination requirement and approved 658 of those requests. (Wise Decl., PageID 393.)

Ms. Steele was one of the employees who submitted an exemption request. (Steele Dep., Ex. 8.) Relevant excerpts from her request are below:

1. **Please describe your religious beliefs and explain how NCH's mandatory COVID-19 vaccination policy conflicts with those beliefs.** I have been a Christian all of my life. When I make decisions, it is very important to me that I follow my moral conscience. In Romans 14.5 Paul encourages believers that when making decisions of conscience, each should be fully convinced in one's mind (v.5). The reason for this is because it is a sin to go against one's conscience (v.23). It would be a sin for me not to follow my conscience, which is strongly telling me that introducing the Covid vaccine into my body is wrong.

2. **Please indicate how long you have held these religious beliefs.** I have held these beliefs regarding moral conscience my entire life.

3. **Please describe why, when, and how you came to believe that COVID-19 vaccinations are against your beliefs.** God created our bodies with functioning immune systems to fight off viruses such as SARS-COV-2. I very strongly believe that God does not intend for our bodies to be humanly manipulated to manufacture the very same disease causing protein that causes COVID-19 disease. I believe that programming our bodies to produce a toxin defiles the functioning of our immune system that God intended as created. I do not believe he designed our bodies to produce toxin. He designed our bodies to fight toxin, through our God given immune systems.

---

[1] Medicare and Medicaid Programs; Omnibus COVID-19 Health Care Staff Vaccination, 86 Fed. Reg. 61,555 (Nov. 5, 2021).

> 4. **Have you received any other vaccinations since holding these religious beliefs?** I have received all childhood vaccines, influenza vaccine, and Hepatitis series since holding these beliefs.
>
> . . . .
>
> **4.b. Please explain whether and how your religious beliefs regarding these vaccinations differ from your religious beliefs regarding the COVID-19 vaccination.** These vaccines work in a very different way than the three available COVID vaccines work. Injecting antigen into ones body is very different than instructing ones body to produce disease causing antigens.

(*Id.* PageID 501.)

Upon reviewing the request, NCH "determined that [Ms. Steele had] not provided sufficient information showing that a religious belief, practice, or observance prohibits [her] from receiving a COVID-19 vaccine." (Steele Dep., Ex. 9, PageID 503.) Although NCH did not explain to Ms. Steele then, it explains that the Committee understood Ms. Steele's objection to be to the new technology used in the mRNA vaccines (i.e., Moderna and Pfizer) and it appeared that Ms. Steele could receive the Johnson & Johnson vaccine, which did not use mRNA technology, without violating her beliefs. (ECF No. 24, PageID 334–35 (citing Bowman-Kingham Dep., ECF No. 24-2, 34:21–25; 50:22–51:20).)

Ms. Steele corresponded via email about NCH's decision with Stacey Smith, the Senior Human Resources Business Partner. (Steele Dep., Ex. 9.) Ms. Steele asked, "What information is lacking? What specific questions do you have regarding the sincerity of my beliefs." (*Id.* PageID 503.) Ms. Smith responded, "We don't provide specifics on what is missing. If you feel you have additional information that you didn't provide in your first submission and would like to resubmit, you may do so." (*Id.* PageID 502.) Ms. Steele responded that she did not understand why her "belief is being measured or questioned." (*Id.*) Ms. Smith replied that Ms. Steele's belief

is not being questioned, rather NCH did not "have enough information to draw a connection between how [Ms. Steele's] belief prohibits [her] from getting the COVID vaccine." (*Id.*)

In accordance with NCH's COVID-19 vaccination policy, Ms. Steele was placed on administrative leave on February 15, 2022. (Wise Decl., Ex. 1, PageID 399; Steele Dep., 122:14–18.) Employees on administrative leave cannot access their work email and NCH's intranet, including self-service payroll functions, to ensure they do not work while on leave. (Smith Dep., ECF No. 24-5, 80:22–82:21.)

In April 2022, counsel for Ms. Steele and NCH exchanged correspondence about Ms. Steele's exemption request. Ms. Steele's attorney made several demands, including that NCH recognize Ms. Steele's religious exemption. (Steele Dep., Ex. 10, PageID 512.) NCH's counsel responded that Ms. Steele's request was not denied outright but rather "not approved because she failed to identify a specific conflict between her religious beliefs and the COVID-19 vaccine requirement," and that she had an opportunity to provide additional information but failed to do so. (Bowman-Kingham Dep., Ex. 6, PageID 389.) The letter explained NCH's understanding that Ms. Steele's objection was to mRNA vaccines and, since the Johnson & Johnson vaccine was not an mRNA vaccine, Ms. Steele "can comply with the Rule without an exemption and without a religious conflict." (*Id.* PageID 390.)

While on administrative leave, Ms. Steele experienced two medical events that impacted her leave. She suffered a severe femur fracture in April 2022 and went on short-term disability. (Steele Dep., 124:3–23.) In September 2022, she tested positive for COVID-19 and received a vaccination deferral. (*Id.* 69:18–70:1.) During that time, Ms. Steele emailed Ms. Smith asking if she was still due to be terminated. (Steele Dep., Ex. 14, PageID 513.) Ms. Smith replied that the termination date would move to the end of the deferral period, explaining that Ms. Steele could

not return to work if she did not have the vaccine or a medical/religious accommodation. (*Id.*) Ms. Steele was terminated on October 13, 2022, after the deferral period ended, for not being in compliance with the COVID-19 vaccination policy. (Bowman-Kingham Dep., 78:22–79:8.)

## II. Procedural Background

Ms. Steele filed a charge of discrimination with the Ohio Civil Rights Commission. (Steele Dep., Ex. 15, PageID 515–30.) She states in her Complaint that she also filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and received a Notice of Right to Sue from the EEOC. (ECF No. 1, ¶ 52–53.)

Ms. Steele filed this lawsuit bringing five causes of action against NCH: (1) Title VII Religious Discrimination – Failure to Accommodate; (2) Title VII Religious Discrimination – Retaliation; (3) Religious Discrimination in Employment under Ohio Revised Code § 4112.02; (4) Disparate Treatment – Age Discrimination under the ADEA; and (5) Age Discrimination in Employment under Ohio Revised Code § 4112.14. (ECF No. 1.)

NCH filed a motion to dismiss. (ECF No. 3.) The Court dismissed the federal and state-law age discrimination claims (Counts 4 and 5) but found that Ms. Steele may proceed on her religious discrimination claims (Counts 1, 2, and 3). (ECF No. 9.)

After discovery, NCH filed a Motion for Summary Judgment. (ECF No. 24.) Ms. Steele filed a response in opposition (ECF No. 29), and Nationwide Children's Hospital filed a reply (ECF No. 31). NCH also filed a Motion to Exclude Testimony and Expert Report of Brett L. Kimmell (ECF No. 23), which Ms. Steele opposed (ECF No. 28), and NCH filed a reply to (ECF No. 30). Additionally, Ms. Steele filed an Unopposed Motion to Appoint Michael L. Jones as Lead Trial Counsel. (ECF No. 39.)

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of showing that the nonmoving party lacks evidence to support an essential element of its claim. *Berryman v. SuperValu Holdings, Inc.*, 669 F.3d 714, 716–17 (6th Cir. 2012); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quoting Fed. R. Civ. P. 56). When evaluating a motion for summary judgment, the court must view the factual evidence in a light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009).

A genuine issue of material fact exists if the nonmoving party can present "significant probative evidence" to show that there is more than "some metaphysical doubt as to the material facts." *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 851 (6th Cir. 2017) (quoting *Moore v. Philip Morris Cos. Inc.*, 8 F.3d 335, 340 (6th Cir. 1993)). "The key issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Rocheleau v. Elder Living Constr., LLC*, 814 F.3d 398, 400 (6th Cir. 2016) (quoting *Liberty Lobby*, 477 U.S. at 251–52). In making that determination, the court does not weigh the evidence or determine the truth of the matter, but it decides whether a genuine issue exists for trial. *Liberty Lobby*, 477 U.S. at 249. "A mere 'scintilla' of evidence in support of the non-moving party's position is insufficient to defeat summary judgment; rather, the non-moving party must present evidence upon which a

reasonable jury could find in her favor." *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 529 (6th Cir. 2012) (quoting *Liberty Lobby*, 477 U.S. at 252).

## ANALYSIS

### I. Title VII Religious Discrimination – Failure to Accommodate

Title VII of the Civil Rights Act prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). To prevail on a Title VII failure-to-accommodate claim, a plaintiff must establish a *prima facie* case of religious discrimination by showing that she (1) holds a sincere religious belief that conflicts with an employment requirement; (2) has informed the employer about the conflicts; and (3) was discharged or disciplined for failing to comply with the conflicting employment requirement. *Bilyeu v. UT-Battelle, LLC*, 154 F.4th 396, 404 (6th Cir. 2025) (quoting *Tepper v. Potter*, 505 F.3d 508, 514 (6th Cir. 2007)). The burden then shifts to the employer to show "that it could not reasonably accommodate the employee without undue hardship." *Henry v. S. Ohio Med. Ctr.*, 155 F.4th 620, 627 (6th Cir. 2025) (quoting *Tepper*, 505 F.3d at 514).

The parties dispute whether Ms. Steele's objection to the COVID-19 vaccine was based on a religious belief. (Mot., ECF No. 24, PageID 340–43; Opp., ECF No. 29, PageID 575–78.) Assuming, without deciding, that Ms. Steele holds a sincere religious belief that conflicts with the COVID-19 vaccination policy, the Court examines whether she sufficiently informed NCH about the conflict.

A plaintiff must provide her employer with "reasonably specific objections" from which the employer could determine which portions of the COVID-19 policy infringe on the plaintiff's

beliefs. *Henry*, 155 F.4th at 629. The question "must be evaluated against the backdrop of the information [the employer] had" at the time. *Id.* at 630.

Here, Ms. Steele's exemption request stated her belief "that God does not intend for our bodies to be humanly manipulated to manufacture the very same disease causing protein that causes COVID-19 disease." (Steele Dep., Ex. 8, PageID 501.) Regarding non-COVID-19 vaccines she wrote, "These vaccines work in a very different way than the three available COVID vaccines work. Injecting antigen into ones body is very different than instructing ones body to produce disease causing antigens." (*Id.*) NCH understood Ms. Steele's statements to mean that she objected to the mRNA vaccines, Moderna and Pfizer. (Bowman-Kingham Dep., 34:21–25; 50:22–51:20.) It informed Ms. Steele of its understanding through attorney correspondence in April 2022 and told her that she could comply with the policy "without an exemption and without a religious conflict" by getting the Johnson & Johnson vaccine. (*Id.*, Ex. 6, PageID 389–90.) Ms. Steele did not submit a new request or clarify her religious conflict.

Ms. Steele now contends that she opposed the production of a "spike protein," and argues that the Johnson & Johnson vaccine caused the body to produce spike proteins and therefore violated her religious beliefs, as well. (Opp., PageID 568, 570.) Yet, when NCH informed her that it understood her request as a religious objection to mRNA vaccines, she did nothing to correct that understanding. *See Smith v. Pyro Mining Co.*, 827 F.2d 1081, 1085 (6th Cir. 1987) ("Although the burden is on the employer to accommodate the employee's religious needs, the employee must make some effort to cooperate with an employer's attempt at accommodation."). Ms. Steele had approximately six months—from April, when NCH informed her of its understanding of her religious conflict, until her termination in October—to clarify, explain, or otherwise correct NCH, yet she never did so.

The relevant issue here is not whether the Johnson & Johnson vaccine caused the body to produce spike proteins, it is whether Ms. Steele sufficiently notified NCH of her religious conflict with the vaccination policy. NCH evaluated Ms. Steele's request based on the information she provided in her exemption request, not the clarified explanation she provides now. Further, she never informed NCH that its understanding of her religious conflict was incorrect. Thus, NCH did not have sufficient notice of her religious conflict with the COVID-19 vaccination policy. *See Henry*, 155 F.4th at 630–32.

Ms. Steele criticizes NCH's conclusion about the Johnson & Johnson vaccine as unresearched and "not reasonably informed." (Opp., PageID 570.) But that criticism assumes that NCH had sufficient notice of Ms. Steele's objection. NCH cannot be faulted for failing to research a factual claim about the Johnson & Johnson vaccine that it did not know formed the basis of Ms. Steele's religious exemption request.

Ms. Steele also cites *EEOC v. Abercrombie & Fitch Stores, Inc.* to argue that "actual knowledge of the need for an accommodation" is not required for an employer to violate Title VII. (Opp., PageID 572–73 (citing 575 U.S. 768, 773 (2015).) But *Abercrombie* addressed disparate-treatment claims, not failure-to-accommodate claims. *Abercrombie*, 575 U.S. at 772. And actual knowledge of the need for an accommodation and notice of a conflict between a religious belief and an employer's policy are separate concepts. NCH had actual knowledge of Ms. Steele's accommodation request. The issue is that it did not have sufficient notice of Ms. Steele's religious conflict.

Even if Ms. Steele had sufficiently informed NCH of her religious conflict, NCH establishes that it could not have reasonably accommodated her without undue hardship. "An undue hardship occurs when accommodating the request would impose a 'substantial' burden 'in

the context of [the] employer's business.'" *Henry*, 155 F.4th at 628 (quoting *Groff v. DeJoy*, 600 U.S. 447, 471 (2023)). In determining whether an accommodation would pose an undue hardship, "an employer is permitted to draw conclusions based on evidence and information available at the time." *Id.* at 632.

NCH asserts that it could not approve religious exemptions that were not legally mandated without risking loss of its Medicare and Medicaid funding. (Mot., PageID 347.) Medicare and Medicaid funding make up about 60% of NCH's total funding. (Wise Decl., PageID 392.) According to NCH, the rule promulgated by the Department of Health and Human Services' Centers for Medicare and Medicaid Services required all Medicare and Medicaid-certified providers and suppliers to require COVID-19 vaccination for all staff. (Mot., PageID 327.) The rule, NCH explains, provided a narrow exception for employees with "legally permitted justifications for exemption" and required covered entities to evaluate exemption requests in "accordance with applicable federal law." (*Id.* (quoting 86 Fed. Reg. 61,569–70 and 61,572).) Covered entities found to be noncompliant could face "civil money penalties, denial of payment for new admissions, or termination of Medicare/Medicaid provider agreement." (*Id.* PageID 328 (quoting 86 Fed. Reg. 61,574).)

Ms. Steele argues that NCH's undue hardship is merely speculative because NCH has provided no evidence that it was audited or that a failed audit would have resulted in a complete loss of Medicare/Medicaid funding. (Opp., PageID 574–75.) But the Sixth Circuit has stated that "an employer does not have to actually experience the hardship in order for the hardship to be recognized as too great to be reasonable." *Wise v. Children's Hosp. Med. Ctr. of Akron*, No. 24-3674, 2025 WL 1392209, at *3 (6th Cir. May 14, 2025) (quoting *Virts v. Consol. Freightways*

*Corp. of Delaware*, 285 F.3d 508, 519 (6th Cir. 2002)). Accordingly, the hardship need not materialize for NCH to be able to establish an undue hardship.

Here, NCH establishes an undue hardship. Because it understood that Ms. Steele could receive a COVID-19 vaccine without violating her religious beliefs, granting her an exemption under those circumstances would have made NCH noncompliant with the regulation and jeopardized its Medicare and Medicaid funding. Since Medicare and Medicaid funding comprises 60% of NCH's funding, potential loss of that funding constitutes a substantial undue hardship in the context of NCH's business. *See Prida v. Option Care Enters.*, No. 5:23-cv-905, 2026 WL 2209758, at *15 n.19 (N.D. Ohio July 31, 2026); *see also Yeager v. FirstEnergy Generation Corp.*, 777 F.3d 362, 363 (6th Cir. 2015) ("An employer is not liable under Title VII when accommodating an employee's religious beliefs would require the employer to violate federal law.") (citation modified).

For these reasons, NCH's Motion for Summary Judgment on Ms. Steele's failure-to-accommodate claim is **GRANTED**.

## II. Title VII Religious Discrimination – Retaliation

Title VII retaliation claims based on circumstantial evidence are analyzed under the *McDonnell Douglas* burden-shifting framework. *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The plaintiff must first establish a *prima facie* case of retaliation by showing that: (1) she engaged in activity protected by Title VII; (2) her exercise of protected activity was known by the defendant; (3) the defendant took an action that was materially adverse to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action. *Bilyeu*, 154 F.4th at 405 (quoting *Laster*, 746 F.3d at 730). In a retaliation context, a materially adverse action is an action

that a reasonable employee would have found to be materially adverse, meaning it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Laster*, 746 F.3d at 719.

If the plaintiff establishes a *prima facie* case, "the burden of production of evidence shifts to the employer to 'articulate some legitimate, nondiscriminatory reason' for its actions." *Morris v. Oldham Cnty. Fiscal Ct.*, 201 F.3d 784, 793 (6th Cir. 2000) (quoting *McDonnell Douglas*, 411 U.S. at 802). If the employer does so, the burden shifts to the plaintiff to demonstrate "that the proffered reason was not the true reason for the employment decision." *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 802).

NCH concedes that some of Ms. Steele's actions were protected activity and that her termination constitutes an adverse employment action. (Mot., PageID 348–49.) The parties disagree which of Ms. Steele's actions constitute protected activity (Mot., PageID 348; Opp., PageID 582), and what constitutes materially adverse actions (Mot., PageID 348–49; Opp., PageID 582). The Court need not resolve these disputes because, even assuming Ms. Steele engaged in protected activity and suffered a materially adverse action, she cannot establish a causal connection between the two.

To establish a causal connection, "a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not" engaged in the protected activity. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). A plaintiff can establish a causal connection by showing a "very close temporal proximity" between the adverse employment action and the protected activity. *Taylor v. Geithner*, 703 F.3d 328, 339 (6th Cir. 2013). "But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the

employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Wilson v. Cleveland Clinic Found.*, 579 F. App'x 392, 399–400 (6th Cir. 2014). Ms. Steele does not attempt to establish a causal connection through temporal proximity or by pairing it with other evidence of retaliatory conduct.[2] (*See* Opp., PageID 580–83.) Thus, she fails to establish a *prima facie* case.

Even if Ms. Steele had established a *prima facie* case of retaliation, NCH articulates a legitimate, nondiscriminatory reason for terminating her, which she does not overcome by showing that the reason is pretextual. NCH maintains that it terminated Ms. Steele in accordance with its COVID-19 vaccination policy because she was not qualified to return to work. (Mot., PageID 349–50.) Ms. Steele challenges the legitimacy of NCH's reason because of its allegedly incorrect conclusion about the Johnson & Johnson vaccine. (Opp., PageID 582–83.) She proffers the same reason to establish pretext—namely that NCH's decision had no basis in fact. (*Id.* PageID 583.) But these arguments presuppose that NCH had sufficient notice of Ms. Steele's religious conflict with the vaccination policy. Since the Court determined above that NCH did not have sufficient notice, Ms. Steele cannot rely on those arguments to show that NCH's reason was not legitimate or pretextual.

For these reasons, NCH's Motion for Summary Judgment on Ms. Steele's Title VII retaliation claim is **GRANTED**.

---

[2] In her argument about adverse employment actions, Ms. Steele states that "all events surrounding NCH's denial" could be seen as retaliatory. (Opp., PageID 582.) Even liberally construing that statement as an argument for "other retaliatory conduct to establish causation," *Wilson*, 579 F. App'x at 399–400, Ms. Steele has produced no evidence from which it can be inferred that her protected activity was the but-for cause of NCH's actions. *See Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 348–49 (6th Cir. 2021) (explaining that but-for causation means that absent the protected activity, the adverse employment action would not have occurred).

### III. Religious Discrimination Under Ohio Revised Code § 4112.02

Ms. Steele states that she pled her state-law claim under a failure-to-accommodate theory. (Opp., PageID 579.) Ohio law mirrors Title VII. *Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir. 2008); *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Com.*, 421 N.E.2d 128, 131 (Ohio 1981). Thus, for the reasons stated above in Section I, Ms. Steele's state-law failure-to-accommodate claim does not survive summary judgment.

For the first time in her opposition brief, Ms. Steele also contends that she satisfies the elements of a state-law disparate-treatment claim. (Opp., PageID 579.) But a party may not advance a new claim or expand its claims to assert new theories in response to a motion for summary judgment. *Bridgeport Music, Inc. v. WB Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007) ("To the extent [plaintiff] seeks to expand its claims to assert new theories, it may not do so in response to summary judgment . . . ."); *Tucker v. Union of Needletrades, Indus., & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005) (explaining that a plaintiff may not raise a new legal claim in response to summary judgment).

Accordingly, NCH's Motion for Summary Judgment on Ms. Steele's state-law claim is **GRANTED**.

## CONCLUSION

For the reasons stated above, (ECF No. 24) Defendant Nationwide Children's Hospital's Motion for Summary Judgment is **GRANTED**. Additionally, (ECF No. 23) Defendant Nationwide Children's Hospital's Motion to Exclude Testimony and Expert Report of Brett L. Kimmell is **DENIED as moot** and (ECF No. 39) Plaintiff Laurie Steele's Unopposed Motion to Appoint Michael L. Jones as Lead Trial Counsel is **DENIED as moot**.

The Clerk is **DIRECTED** to enter judgment and terminate this case on the docket.

**IT IS SO ORDERED.**

**8/25/2026**
**DATE**

**s/Edmund A. Sargus, Jr.**
**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**